# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. MARSHALL WARD HOWELL

### Direct Appeal from the Circuit Court for Bedford County
### No. 15624     Lee Russell, Judge

---

### No. M2005-02050-CCA-R3-CD - Filed March 6, 2006

---

The defendant, Marshall Ward Howell, entered a plea of guilty to sale of a controlled substance. The trial court imposed a sentence of eight years to be served in a community corrections program after service of a period of incarceration. Five months after his conviction, the community corrections sentence was revoked and the defendant was ordered to serve the remainder of his term in the Department of Correction. In this appeal, the single issue presented for review is whether revocation was proper. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Andrew Jackson Dearing, III, Assistant District Public Defender, for the appellant, Marshall Ward Howell.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On March 3, 2005, the defendant pled guilty to sale of a schedule II controlled substance and received an eight-year sentence, to be served on community corrections. Four months later, Faith Dudley, a community corrections officer, filed an affidavit alleging that the defendant had violated a condition of his community corrections program by having tested positive for cocaine in a pre-employment drug screen. While on release, the defendant had secured employment with Cooper Steel, which required drug testing. When the defendant tested positive for cocaine, he notified his community corrections officer, which led to the issuance of the warrant.

At the revocation hearing, the state introduced the results of the drug test conducted by the defendant's employer on June 13, 2005. The report was admitted over the defendant's objection. In

an affidavit accompanying that report, Dr. David Green, the director of the laboratory that conducted the drug test, recited his qualifications, described the laboratory's methods of testing, and endorsed the scientific reliability of those methods. He also described the procedures his laboratory followed in conducting drug tests, including those utilized during the testing of the defendant's sample. He confirmed that his laboratory's analysis detected the presence of cocaine in the defendant's urine sample and claimed that "[b]y using an analytical approach that requires two levels of testing . . . , coupled with stringent chain of custody documentation, the accuracy rate [was] 100%." The affidavit indicates that Dr. Green works in Gretna, Louisiana.

The defendant testified that a receptionist at Cooper Steel informed him about a week after he began working there that he needed to take the drug test. He stated that he filled out some paperwork, drank a glass of water, and then provided the receptionist with a urine sample. He contended that the receptionist who took the sample was not wearing gloves at the time. The defendant testified that after the company informed him that he had tested positive, he reported the results to his community corrections officer but insisted that the test was not performed properly. He recalled that his community corrections officer conducted a drug screen two days later, which produced negative results. The defendant testified that during his participation in the program, the community corrections officer had administered a total of six drug tests over a period of a week after the drug screen was performed by his employer and that each had produced negative results. Neither the state nor the defense ever asked the defendant whether he had used cocaine during his term in the program.

Ms. Dudley, the defendant's case officer, testified that when the defendant informed her that he had failed his employer's drug screen, she performed her own screening, which indicated he was "clean." She acknowledged that when performing drug screens, she always used latex gloves when handling any urine sample but did so out of concerns for her own health rather than out of any fear of contaminating the sample. She testified that she performed another drug screen of the defendant approximately one week later at his home, which also failed to indicate the presence of any drugs.

At the conclusion of the proceeding, the state argued that the defendant had been untruthful when he testified that his case officer had tested him six times since the drug screen by his employer, noting that the case officer testified that he had only been tested twice. The defense countered that the defendant's claim was not untruthful because although he had provided only two urine samples, the first screen involved one measuring stick and the second screen included five of the sticks, all of which were examined.

The trial court revoked the defendant's community corrections sentence, holding as follows:

I do not find that the defendant has credibility . . . . He's been caught in a lie today [as to the number of drug-free test screens]. There is a gross discrepancy between the form he signed, the contents of that, and what he had to say today also.

I find that the test that was given by Cooper Steel is reliable, and I find that he has violated the terms of his community corrections. I'm going to violate him and require that he serve the balance of his sentence.

In this appeal, the defendant contends that the trial court erred by revoking his community corrections sentence based upon the results of his pre-employment drug screen. He relies specifically on Tennessee Code Annotated section 50-9-109(c), which he claims precluded the use of pre-employment drug screen results during his revocation hearing. The state asserts that use of the results of the drug screen against the defendant was not precluded by statute because the defendant waived confidentiality and because a community corrections revocation hearing is not a criminal proceeding as contemplated by the statute.

As a matter of law, once a defendant violates the terms of his community corrections program, the trial court may revoke the sentence and impose a new one:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4) (2003).

In State v. Harkins, our supreme court ruled that a community corrections sentence is so similar to a probationary sentence as to require the application of the same standard of review. 811 S.W.2d 79, 83 (Tenn. 1991). Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e) (2003); see Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. Harkins, 811 S.W.2d at 82. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In this case, the defendant, citing Tennessee Code Annotated section 50-9-109(c), contends that the results of the drug screen conducted by his employer were not admissible at the revocation hearing. That statute provides as follows:

Information on drug or alcohol test results for tests administered pursuant to this chapter shall not be released or used in any criminal proceeding against the employee or job applicant. Information released contrary to this section is inadmissible as evidence in any such criminal proceeding.

Tenn. Code Ann. § 50-9-109(c) (2005).

Community corrections revocation proceedings provide a procedure to determine whether an offender in the program should be deprived of liberty for failure to comply with the conditions of his sentence. See Tenn. Code Ann. §§ 40-36-106(e)(3)(B), 40-35-311(a); State v. Kenneth Hayes, No. M2004-00715-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., at Nashville, June 28, 2005). The United States Supreme Court held in Morrissey v. Brewer that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions." 408 U.S. 471, 480 (1972). Our supreme court has similarly described a probation revocation hearing as "'summary in nature'" and concluded that a "'defendant is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime.'" Bledsoe v. State, 387 S.W.2d 811, 814 (Tenn. 1965) (quoting 5 Wharton's Criminal Law and Procedure 392 (Anderson ed. 1957)). The informal nature of the proceedings do "not require the full panoply of procedural safeguards associated with a criminal trial." Black v. Romano, 471 U.S. 606, 613 (1985); see State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993). For instance, rules regarding the admissibility of evidence are relaxed, there is no right to a jury, and the standard of proof is not beyond a reasonable doubt but by a preponderance of the evidence. Kenneth Hayes, slip op. at 4 (citing Barker v. State, 483 S.W.2d 586, 588 (Tenn. Crim. App. 1972)).

There are, however, significant differences between probation and community corrections sentencing schemes. One key difference, of course, is that a defendant whose community corrections sentence has been revoked is entitled to credit toward the sentence for the time spent in community corrections whereas a defendant whose probation has been revoked is not entitled to any such credit. Carpenter v. State, 136 S.W.3d 608, 612 (Tenn. 2004). Another "principal difference is that the community corrections sentencing scheme authorizes the trial court to impose a new sentence for any period of time up to the maximum sentence for the offense committed upon revocation of community corrections." Id. at 611. A court adjudicating a revocation of a community corrections placement "exercises the same discretion in resentencing as did the initial sentencing court" and is authorized "to order a new and longer sentence than had initially been ordered." Id. at 612.

In Carpenter, the petitioner was convicted of one count of felony theft and one count of misdemeanor theft and the trial court imposed an effective six-year sentence. The trial court ordered service of the sentence in a community corrections program. The sentence was subsequently revoked and the trial court imposed a new, enhanced sentence of eight years as authorized by Tennessee Code Annotated section 40-36-106(e). The petitioner attempted to challenge the enhanced sentence in a post-conviction proceeding on the ground of ineffective assistance of counsel. Our supreme court held that because of the "distinctly different" sentencing schemes of

probation and community corrections, the petitioner enjoyed the right to effective assistance of counsel, Carpenter, 136 S.W.3d at 612, a right that emanates from the Sixth Amendment's right to counsel in "criminal prosecutions." See Strickland v. Washington, 466, U.S. 668, 685-86 (1984). It is our view, therefore, that a community corrections revocation proceeding is a "criminal proceeding" as contemplated by Tennessee Code Annotated § 50-9-109(c).

Chapter 9 of title 50 regulates Drug-Free Workplace Programs. See Tenn. Code Ann. §§ 50-9-101 through -114. The General Assembly enacted these statutes with the intent

> to promote drug-free workplaces in order that employers in this state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace and reach their desired levels of success without experiencing the costs, delays and tragedies associated with work-related accidents resulting from drug or alcohol abuse by employees.

Tenn. Code Ann. § 50-9-101(a). As an incentive to participate in a drug-free workplace program, an employer is afforded the opportunity to qualify for a credit toward its workers' compensation insurance premiums as well as deny workers' compensation medical and indemnity benefits and shift the burden of proof in workers' compensation disputes. See Tenn. Code Ann. § 50-9-104(a). To enjoy these benefits, an employer must implement a drug-free workplace program pursuant to rules adopted by the commissioner of labor and workforce development. See id. § 50-9-104. The applicability of section 109(c) is also dependent upon the employer having implemented a drug-free workplace program pursuant to rules adopted by the commission.

When a defendant challenges the introduction of evidence, a timely objection and the specific ground therefor must be stated for the record. Tenn. R. Evid. 103(a)(1). This is necessary to enable meaningful appellate review. State v. Dale L. Courtney, No. 03C01-9406-CR-00195, slip op. at 5 (Tenn. Crim. App., at Knoxville, Apr. 11, 1995).

Here, the defendant objected to the introduction of the drug screen results on the basis of Tennessee Code Annotated section 50-9-109. The applicability of the statute to criminal proceedings depends upon the employer's implementation of a drug-free workplace program pursuant to specific rules adopted by the commission of the department of labor and workforce development. In this instance, the defendant failed to establish that his employer had qualified under the statute. Had he done so, the drug screen results should have been excluded.[1]

The introduction of the drug test report, however, raises other statutory and constitutional concerns. In Morrissey, the United States Supreme Court held that the procedure in a probation revocation hearing "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489. In that

---

[1]The public records establish that in 2005, Cooper Steel was not a participant in the Drug-Free Workplace Program.

case, the Court balanced the traditional rights of the defendant to due process and the confrontation of witnesses with a desire for flexibility in a post-trial revocation proceeding. Using these same principles, our supreme court in Wade ruled that revocation of probation could not be based upon an unidentified laboratory report without specific findings by the trial court (1) that the information contained in the report is reliable and (2) that there is good cause to explain the absence of the technician who tested the sample. 863 S.W.2d at 409. Later, in State v. Gregory, 946 S.W.2d 829, 831-32 (Tenn. Crim. App. 1997), this court ruled that a laboratory report accompanied by an affidavit was admissible in the absence of the lab technician but only under certain conditions, many of which were enacted by a 1998 amendment to Tennessee Code Annotated section 40-35-311.

Tennessee Code Annotated section 40-35-311(c)(1) provides as follows:

A laboratory report regarding a defendant's drug test may be admissible in probation revocation proceedings, even though the laboratory technician who performed the test is not present to testify, when accompanied by an affidavit containing at least the following information:

(A) The identity of the certifying technician;
(B) A statement of qualifications from the certifying technician;
(C) A specific description of the testing methodology;
(D) A statement that the method of testing was the most accurate test for this particular drug;
(E) A certification that the test results were reliable and accurate;
(F) A declaration that all established procedures and protocols were followed; and
(G) A statement of acknowledgment that submission of false information in the affidavit may subject the affiant to prosecution for the criminal offense of perjury pursuant to § 39-16-702.

Tenn. Code Ann. § 40-35-311(c)(1) (2003). This amendment was intended to "make certain that only reliable evidence is allowed at a revocation hearing, including that appropriate testing methods . . . were utilized." State v. John Brewer, M2002-02749-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., at Nashville, Nov. 13, 2003). The requirements enumerated in this statute are the minimal requirements that must be satisfied.

The affidavit accompanying the drug test report in this case appears to satisfy each of the requirements set forth in section 40-30-311(c)(1). The laboratory that performed the testing first analyzed the defendant's urine sample with a technique called immunoassay, a procedure that the affiant claims the scientific community regards as "an acceptable screening test for detecting drugs in the urine." The laboratory then screened the urine sample with a gas chromatography/mass spectrometry, which the affiant describes as "the most legally defensible method of drug identification." Although the affidavit does not contain a direct statement that the testing methodologies employed by the laboratory were the "most accurate test for th[e] particular drug,"

namely cocaine, see Tenn. Code Ann. § 40-35-311(c)(1)(D), it does contain a statement that the accuracy rate of the tests, which detected cocaine, was 100%. Under these circumstances, the affidavit satisfied the requirements of section 40-35-311(c)(1).

Guarantees of due process also require that there be a showing of good cause as to why the technician who prepared the report did not personally appear at the hearing. See Wade, 863 S.W.2d at 409; see also State v. Anthen Lee Parker, No. 02C01-9111-CC-00245 (Tenn. Crim. App., at Jackson, Feb. 9, 1994). "'A probationer has a limited liberty interest; nevertheless, that person is entitled to minimal due process rights.'" Wade, 863 S.W.2d at 409 (quoting Wilson v. State, 521 A.2d 1257 (Md. App. 1987)). In outlining those minimal requirements of due process, the United States Supreme Court has specifically held that a probationer in a revocation hearing has "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Morrissey, 408 U.S. at 489; see also Wade, 863 S.W.2d at 408-09. In this instance, the state made no effort to establish the reasons for the absence of the individual who conducted the test. The affidavit, however, indicates that the affiant worked in a laboratory in Gretna, Louisiana. This court has held that the cost of procuring an out-of-state laboratory technician constitutes good cause for his absence. Gregory, 946 S.W.2d at 832; State v. Marc Adolph Lewin, M2003-00679-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., at Nashville, Mar. 22, 2004).

In our view, the results of the drug screen were properly admitted as evidence. Because the defendant violated the terms of his community corrections sentence, the trial court did not abuse its discretionary authority. Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE